**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-7145

UNITED STATES OF AMERICA,

    Plaintiff – Appellee,

  v.

DANIEL CHASE HARRIS,

    Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Mark S. Davis, Chief District Judge. (2:14-cr-00076-MSD-DEM-1; 2:18-cv-00140-MSD)

Argued: December 8, 2020            Decided: March 18, 2021

Before DIAZ, THACKER, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge Harris wrote the opinion, in which Judge Diaz and Judge Thacker joined.

**ARGUED:** Steven William Becker, LAW OFFICE OF STEVEN W. BECKER LLC, Chicago, Illinois, for Appellant. Daniel Taylor Young, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Elizabeth M. Yusi, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

Daniel Chase Harris was stationed in Japan with the United States Navy when he used the internet to begin a lengthy and coercive sexual relationship with a young girl in Virginia. Harris continued to target this victim for almost two years, not only from Japan but also from Guam and within the continental United States, as he transferred duty stations and traveled on leave.

As a result of that abusive relationship, a jury convicted Harris of coercing a minor into illegal sexual activity in violation of 18 U.S.C. § 2422(b). The jury also convicted Harris of multiple counts related to the sexual abuse of several other child victims. After this court affirmed his convictions and sentence on appeal, Harris filed a § 2255 petition challenging his § 2422(b) conviction, which the district court denied.

In this appeal, Harris argues that his conviction under § 2422(b) constituted an impermissible extraterritorial application of that statutory provision. It is true that Congress's statutes may be applied extraterritorially only when their text makes clear that such application is intended. But we need not decide here whether § 2422(b)'s text meets that standard, because Harris's conviction involved a permissible *domestic* application of § 2422(b): Harris's Virginia victim received his messages and was coerced into sexual activity in the United States, and Harris himself was in the United States when he sent some of those messages. For that reason, we affirm the district court's denial of Harris's § 2255 petition.

I.

Because it is necessary to understand the key charge against Harris and Harris's arguments before the district court, we begin with a brief review of the statute at issue, 18 U.S.C. § 2422(b), and the complicated statutory regime that has grown up around it. We turn then to the facts of this case and the proceedings before the district court.

A.

Harris challenges his conviction under 18 U.S.C. § 2422(b), which imposes a minimum ten-year sentence on "[w]hoever, using the mail or any facility or means of interstate or foreign commerce, or *within the special maritime and territorial jurisdiction of the United States* knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(b) (emphasis added). One of the questions raised in this appeal is whether the italicized text – applying § 2422(b) to persons within the "special maritime and territorial jurisdiction of the United States" – authorizes extraterritorial application of the statute.

The "special maritime and territorial jurisdiction of the United States" is defined in a separate statutory provision, 18 U.S.C. § 7(3), to include "[a]ny lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof." In *United States v. Erdos*, 474 F.2d 157 (4th Cir. 1973), we held that this definition extends to overseas United States facilities – there, a United States embassy in Equatorial Guinea. It followed, we concluded, that a federal manslaughter statute covering killings committed "within the special maritime and territorial jurisdiction of the United

3

States" – the same language used in § 2422(b) – could be applied extraterritorially, to prosecute a killing at the embassy. *Id.* at 158–60 & 158 n.1 (quoting 18 U.S.C. § 1112(b)). Under *Erdos*, it would seem that § 2422(b)'s reference to the same "special maritime and territorial jurisdiction," incorporating the same definition in § 7(3), would authorize extraterritorial application of that statute, as well.

But there is a potential complication, because after our decision in *Erdos*, Congress amended § 7, adding to the definition of "special maritime and territorial jurisdiction" a provision that expressly addresses the status of "United States diplomatic, consular, [or] military . . . missions or entities in foreign States," 18 U.S.C. § 7(9), like the United States Navy bases at which Harris was posted. Under the new provision, those overseas entities do fall within the definition, but – due to a series of amendments and carveouts – *not* with respect to "member[s] of the Armed Forces subject to . . . the Uniform Code of Military Justice," *id.*; 18 U.S.C. § 3261(a), unless they fall within certain exceptions not relevant here, *id.* at § 3261(a), (d).

So the question Harris raises is whether a prosecution under § 2422(b) for conduct committed at a military facility abroad still may be predicated on § 7(3)'s general definition of "special maritime and territorial jurisdiction" as construed by *Erdos* – or whether it now must proceed under § 7(9)'s more specific definition, in which case Harris, as a member of the armed forces subject to the Uniform Code of Military Justice, would be excluded from its reach.

4

**B.**

In 2014, Harris was indicted in the Eastern District of Virginia on 32 charges related to his use of the internet to coerce numerous minors into engaging in sexually explicit conduct and transmitting visual depictions of that conduct to him.[1]  At that time, and at the time of his offenses, Harris was serving in the United States Navy.  The conduct for which he was indicted occurred at military facilities in Japan and Guam; at a naval station in Key West, Florida; and at other locations in the United States, including multiple locations within Virginia.  The minor victim relevant to this appeal, known as H.K., was in Virginia for the duration of Harris's crimes.

After a 13-day trial, during which the district court dismissed one count of the indictment on the government's motion, a jury convicted Harris of the remaining 31 charges against him.  The district court sentenced Harris to a total of 50 years' imprisonment and a life term of supervised release.  Our court affirmed his convictions and sentence on appeal, *United States v. Harris*, 653 F. App'x 203 (4th Cir. 2016) (per curiam), and the Supreme Court denied certiorari, *Harris v. United States*, 137 S. Ct. 1355 (2017).

Harris then filed the 28 U.S.C. § 2255 petition that is the subject of this appeal.  In his petition, Harris primarily challenged his conviction under § 2422(b) for coercing H.K.

---

[1] Specifically, Harris was charged with coercing minors into producing child pornography in violation of 18 U.S.C. § 2251(a), (e); coercing minors into engaging in sexual activity that could be charged as a criminal offense (namely, production of child pornography under Virginia law) in violation of 18 U.S.C. § 2422(b); receipt, transportation, and possession of child pornography in violation of 18 U.S.C. §§ 2252(a) and 2256(1); obstructing an official proceeding in violation of 18 U.S.C. § 1512(c)(2); and witness tampering in violation of 18 U.S.C. § 1512(c)(2).

to engage in sexual activity, as charged in Count 14 of the indictment. That count specified that Harris's conduct began abroad, at a military facility in Japan which it described as "in the Special Maritime and Territorial Jurisdiction of the United States," tracking the language of § 2422(b). J.A. 44. Harris's conduct continued, Count 14 alleged, "in the Eastern District of Virginia, and elsewhere," and violated § 2422(b) "and [§] 7" – the provision that defines the "special maritime and territorial jurisdiction of the United States" as used in § 2422(b). *Id.*[2]

H.K., the victim identified in Count 14, testified at trial. At the time of the relevant events, she was 13 or 14 years old and living in Virginia. She described meeting a man on Facebook, and the ways in which he coerced her into performing sexual acts on video chats with him and sending him sexually explicit images. In particular, the man threatened to publish explicit images of her on the internet or send them to her school if she did not accede to his continued demands. Other evidence introduced by the government showed

---

[2] In full, Count 14 charged that:

> From on or about March 19, 2011, to on or about October 8, 2011, beginning at Naval Air Facility Atsugi (Japan) in the Special Maritime and Territorial Jurisdiction of the United States, and continuing in the Eastern District of Virginia, and elsewhere, the defendant DANIEL CHASE HARRIS, used a facility and means of interstate and foreign commerce to attempt to and did knowingly persuade, induce, entice, and coerce H.K., who had not attained the age of 18 years, to engage in a sexual activity for which a person can be charged with a criminal offense under Virginia law, namely, Production of Child Pornography, in violation of § 18.2-374.1 of the Virginia code. (In violation of Title 18, United States Code, Sections 2422(b) and 7).

J.A. 44.

6

that it was Harris, using an assumed name, who sent H.K. the coercive messages she described. The evidence also showed that Harris began targeting H.K. while he was stationed in Japan, and then continued to contact her from Guam and while he was in several U.S. states, including Virginia.

In his § 2255 petition, Harris, framing his challenge in jurisdictional terms, argued that he could not be convicted under Count 14 because that count charged conduct that occurred while he was stationed overseas with the military. Harris acknowledged that § 2422(b) applies to all persons "within the special maritime and territorial jurisdiction of the United States," as defined by 18 U.S.C. § 7. But, he argued, the relevant definition is now the one codified at § 7(9), which specifically includes overseas military facilities but *excludes* active-duty service members subject to the Uniform Code of Military Justice, like Harris. It followed, according to Harris, that the district court "lacked jurisdiction to enter [a] judgment against and to impose [a] sentence upon [him] on Count Fourteen." J.A. 610. Harris also argued that his trial counsel was ineffective for failing to raise this claim in his initial proceeding, and that his appellate counsel was ineffective for failing to raise two unrelated issues.

The district court rejected Harris's challenge to the application of § 2422(b) in Count 14. After carefully reviewing Harris's statutory argument, the court concluded that it was unclear whether the passage of § 7(9), with its specific reference to overseas military facilities, had effectively supplanted the definition at § 7(3) – and called into question our decision in *Erdos* – in cases involving crimes committed by military personnel on military bases abroad. But, the court held, it was unnecessary to answer that question: Whatever

7

the precise scope of § 2422(b)'s extraterritorial reach, it could be used in this case to prosecute Harris because Count 14 charged Harris with domestic criminal conduct. Harris's coercive messages were received and had their intended effect in Virginia, where H.K. resided and engaged in the unlawful sexual activity into which Harris coerced her. Moreover, the court continued, Harris "electronically reached into the victim's bedroom" not only from Japan but also from within the United States, sending some of his messages to H.K. while "physically located in Virginia Beach, Virginia," as well as other states. J.A. 687 (emphasis omitted). Even assuming, then, the merits of Harris's statutory argument, it had no effect on the viability of Count 14. The district court also rejected Harris's ineffective assistance claims, and thus denied his petition.

This timely appeal followed. We granted a certificate of appealability to decide whether the district court erred in rejecting Harris's claim that it lacked jurisdiction to support Harris's conviction under § 2422(b), as alleged in Count 14 of the indictment, and denied a certificate of appealability as to any other issues.[3]

## II.

### A.

---

[3] We note that Harris's direct challenge to his conviction – and the only issue before us on appeal – involves just one count of a 31-count conviction, with no obvious effect on Harris's total sentence. Harris argues, however, that the evidence introduced by the government to prove the allegations in Count 14 was so damning that it also may have influenced his convictions on the other counts, so that a vacatur of his conviction on Count 14 would call into question the remaining convictions, as well.

8

We begin with some preliminary issues regarding the nature of Harris's claim and our standard of review. The crux of Harris's argument on appeal is that § 2422(b) and § 7(9) do not allow for the prosecution of active-duty service members for crimes committed on military bases abroad. Throughout, Harris has framed this argument in jurisdictional terms, contending that the trial court lacked personal jurisdiction over him with respect to Count 14, and the district court followed suit. But what is at issue here is not, in fact, a matter of jurisdiction, at least in the formal – rather than colloquial – sense of the word. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) ("Jurisdiction . . . is a word of many, too many, meanings." (internal quotation marks omitted)).

Personal jurisdiction over a criminal defendant is established by the presence of the defendant before the court. *See United States v. Perez*, 752 F.3d 398, 407 (4th Cir. 2014) ("Personal jurisdiction in a criminal case is still based on physical presence . . . ."); *United States v. White*, 480 F. App'x 193, 194 (4th Cir. 2012) (per curiam) ("Physical presence in the United States usually supplies the only necessary prerequisite for personal jurisdiction in a federal criminal prosecution."). Harris was physically present before the district court for his criminal trial, and that was enough to give the court personal jurisdiction over him with respect to all counts of the indictment.

Harris does not contest his presence before the trial court. Instead, he argues that § 2422(b), notwithstanding its reference to the "special maritime and territorial jurisdiction of the United States," does not extend to criminal conduct committed by military personnel overseas. That is a claim about the extraterritorial reach of § 2422(b), and as the Supreme

9

Court has explained, that is a merits question, not a question of jurisdiction. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) ("[T]o ask what conduct § 10(b) reaches is to ask what conduct § 10(b) prohibits, which is a merits question."). Whether or not § 2422(b) applies to Harris's conduct, in other words, the district court had jurisdiction to adjudicate that issue. *See id.*

Because Harris is asserting a merits claim, our review of the district court's denial of Harris's petition is subject to normal rules of forfeiture and waiver. That matters in this case, because it is undisputed that Harris failed to raise his claim regarding the reach of § 2422(b) during his initial criminal proceeding or on direct appeal, rendering it procedurally defaulted for purposes of this § 2255 proceeding. *See United States v. Fugit*, 703 F.3d 248, 253 (4th Cir. 2012). As a result, we ordinarily could review it only under the cause-and-prejudice standard for defaulted claims. *See id.*

But there is yet another forfeiture in this case, because the government, as it concedes, failed to raise procedural default as a defense to Harris's § 2255 petition in the district court. As we have explained, "[p]rocedural default must be pled as an affirmative defense" or else the government will "lose the right to assert the defense thereafter." *Royal v. Taylor*, 188 F.3d 239, 247 (4th Cir. 1999) (internal quotation marks omitted). The government acknowledges this, but suggests that maybe it could "assert the defense" just a little: Perhaps, it says, we could review Harris's claim for plain error, a form of review more generous than cause-and-prejudice but still significantly stricter than our ordinary de novo review. We decline this invitation. Plain-error review is not a consolation prize for the government when it fails to raise a procedural-default defense. It is formulated

10

specifically for appeals in which a defendant challenges a conviction on grounds not first raised in the district court, *see, e.g.*, *United States v. Walker*, 934 F.3d 375, 377–78 (4th Cir. 2019), and has no sensible application in a case like this, in which Harris *did* raise his § 2422(b) claim before the district court deciding his § 2255 petition.

Because the government forfeited its procedural-default defense, we proceed under our ordinary standard of review. *See United States v. Metzger*, 3 F.3d 756, 757–58 (4th Cir. 1993). We thus review de novo the legal conclusions on which the district court rested in denying Harris's § 2255 petition. *See United States v. Morris*, 917 F.3d 818, 822 (4th Cir. 2019).

### B.

Harris's argument, at its core, is that his conviction on Count 14 – which alleged at least some conduct occurring at a military base abroad – constituted an impermissible extraterritorial application of § 2422(b). And indeed, "[i]t is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison*, 561 U.S. at 255 (internal quotation marks omitted). Courts thus "presume that federal statutes apply" only domestically, "within the territorial jurisdiction of the United States." *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018) (internal quotation marks omitted). The Fourth Circuit has recognized that this presumption – known as the presumption against extraterritoriality – extends to federal criminal statutes, like § 2422(b). *See United States v. Ayesh*, 702 F.3d 162, 166 (4th Cir. 2012).

The Supreme Court has established a two-part framework for deciding questions of

11

extraterritoriality.  *See WesternGeco*, 138 S. Ct. at 2136.  The first step asks whether the text of the relevant statute "provides a clear indication of an extraterritorial application," sufficient to rebut the presumption against extraterritoriality.  *Id.* (internal quotation marks omitted).  If it does not, and the presumption remains in force, then the second step "asks whether the case involves a domestic application of the statute" – that is, "whether the conduct relevant to [the statute's] focus occurred in United States territory."  *Id.* (internal quotation marks omitted).  If it did, then application of the statute is permissible.  *Id.*

Ordinarily, courts should proceed in sequence, addressing step one first and step two only where necessary.  *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 n.5 (2016).  But we also have discretion to begin at step two in "appropriate cases," *id.*, including cases in which the step-one inquiry involves "difficult questions" that would not change the outcome but might have "far-reaching effects" in the future, *WesternGeco*, 138 S. Ct. at 2136 (internal quotation marks omitted).  We think this is just such a case.  Beginning with the step-one inquiry – whether § 2422(b)'s reference to the "special maritime and territorial jurisdiction of the United States," as defined by the various subsections of § 7, plainly enough contemplates extraterritorial application in these circumstances that it rebuts the presumption against extraterritoriality – would require us to parse an exceedingly complex statutory regime, and to consider whether our longstanding precedent in *Erdos* has been undermined or abrogated by subsequent amendments.  As the district court concluded, those are difficult issues, and they would have implications that stretch well beyond this case.  At the same time, their resolution would not make a difference for *this* case because, as we explain below, Harris's conviction

12

on Count 14 involved only a domestic application of § 2422(b). We therefore begin – and end – with step two of the analysis.

Key to the second step is identifying § 2422(b)'s "focus." *Id.* at 2137. For purposes of the extraterritoriality analysis, a statute's "focus" is "the object of its solicitude," including the conduct it seeks to regulate and the parties and interests it seeks to protect. *Id.* (internal quotation marks and alterations omitted). If the conduct relevant to the statute's focus occurred within the United States, then the case "involves a permissible domestic application" of the statute. *Id.* (internal quotation marks omitted). And, critically, that is true even if additional and related conduct occurred abroad. *Id.*

Here, the conduct charged in Count 14 that is relevant to § 2422(b)'s focus occurred in the United States, not overseas. Section 2422(b)'s focus is clear: The "object[s]" of § 2422(b)'s "solicitude" – the "parties . . . it seeks to protect," *id.* (internal quotation marks and alterations omitted) – are children like H.K., the victim in this case. "The primary evil Congress meant to avert by enacting § 2422(b) was the psychological sexualization of children . . . ." *Fugit*, 703 F.3d at 255; *see also United States v. Engle*, 676 F.3d 405, 419 (4th Cir. 2012) (recognizing that § 2422(b) "was designed to protect children from the act of solicitation" (internal quotation marks omitted)). Accordingly, what § 2422(b) criminalizes is "an intentional attempt to achieve a *mental* state – a minor's assent" – in its young victims. *Fugit*, 703 F.3d at 255 (internal quotation marks omitted). And the conduct § 2422(b) "seeks to regulate," *WesternGeco*, 138 S. Ct. at 2137 (internal quotation marks omitted) – or rather, prevent – is coerced sexual activity by children, *see* 18 U.S.C.

13

§ 2422(b) (criminalizing coercion of a minor "to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense").

It is equally clear that the conduct relevant to this statutory focus occurred, in this case, in the United States. What matters, given § 2422(b)'s focus, is the location of a child victim when she is targeted by an offender; that is the site at which her "assent" is coerced, *see Fugit*, 703 F.3d at 255, and at which she engages in the sexual activity that § 2422(b) seeks to prevent. Had H.K., like Harris, been in Japan when she was targeted by him, then we would have a different case. But H.K. was in *Virginia* when she received Harris's messages and was coerced into engaging in sexual activity, which means that the "conduct relevant to [§ 2422(b)'s] focus occurred in the United States." *WesternGeco*, 138 S. Ct. at 2137 (internal quotation marks omitted); *see* J.A. at 689–90 (describing Harris's conduct as "victimiz[ing] a minor through affirmatively reaching into the territorial United States").

The Second Circuit reached a similar conclusion in *United States v. Gasperini*, 729 F. App'x 112 (2d Cir. 2018) (summary order). There, the defendant was convicted under 18 U.S.C. § 1030(a)(2), a provision of the Computer Fraud and Abuse Act of 1986, of accessing, without authorization, several computers in the United States. *Id.* at 114. Because he himself was not in the United States, and instead accessed the computers from overseas, the defendant argued, his conviction constituted an impermissible extraterritorial application of § 1030(a)(2). *Id.*[4] The court disagreed, holding that his conviction involved

---

[4] A companion opinion issued alongside the Second Circuit's order describes the defendant as an Italian citizen arrested in the Netherlands. *See United States v. Gasperini*, 894 F.3d 482, 486 (2d Cir. 2018).

14

only a domestic application of the statute: "[B]ecause the focus of the statute is gaining access to computers and obtaining information from them," the relevant conduct occurred in the United States, where the computers were located, and not abroad, where the defendant was located. *Id.* So too here: Because § 2422(b)'s focus is on the coercion of children into sexual activity, the conduct relevant to the extraterritoriality analysis occurred in Virginia, where Harris's victim received his messages and was compelled to assent to his demands for sexual activity.

That conclusion is only bolstered, as the district court emphasized, *see* J.A. 687, 690, by the fact that Harris *himself* also was present in the United States – indeed, right in Virginia – when he sent at least some of his messages to H.K. In *United States v. Sitzmann*, 893 F.3d 811 (D.C. Cir. 2018) (per curiam), for instance, the defendant was convicted under 21 U.S.C. § 841(a) and § 846 of conspiring to traffic large quantities of cocaine from Mexico and Colombia to the United States, Canada, Europe, and elsewhere. Because much of his alleged conduct occurred outside the United States and was directed toward drug smuggling in other countries, the defendant argued, his conviction could be sustained only if the relevant statutes applied extraterritorially. *Id.* at 821–22. Again, the court disagreed; the defendant's conviction, it held, was a domestic application of the statutes, in part because the defendant had been physically present in the United States when he engaged in at least some of his actions in support of the conspiracy. *Id.* at 822.

The same is true here, where Harris "engaged in [some] activity in the United States," *id.*, in connection with his § 2422(b) conviction. It is of course true that not *all* of the conduct charged in Count 14 occurred in the United States; that count expressly

15

identifies Japan as the country from which Harris first contacted H.K. But for purposes of the extraterritoriality framework's second step, that makes no difference. Because the conduct "relevant to the statute's focus" occurred in the United States, this case involves a permissible domestic application of § 2422(b) – and that is so "even if other conduct occurred abroad." *WesternGeco*, 138 S. Ct. at 2137 (internal quotation marks omitted); *see also Sitzmann*, 893 F.3d at 822.

### III.

For the reasons given above, the judgment of the district court is affirmed.

*AFFIRMED*